**THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD SHERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-cv-02183-RWS |
| | ) | |
| BERKADIA COMMERCIAL MORTGAGE | ) | |
| LLC | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BERKADIA COMMERCIAL MORTGAGE LLC'S
RESPONSE TO PLAINTIFF'S MOTION FOR DIRECTION**

Defendant Berkadia Commercial Mortgage ("Berkadia") respectfully submits this response to Plaintiff's Motion for Direction Regarding Attorney Memorandum ("Plaintiff's Motion"). For the reasons discussed below, Berkadia respectfully requests that the Court deny Plaintiff's requested relief and instead issue an order requiring Plaintiff to return the privileged memorandum to Berkadia and destroy all copies in his or his attorneys' possession.

**I. INTRODUCTION**

Plaintiff's Motion requests extraordinary relief. Plaintiff asks the Court to allow him to use a privileged memorandum that he wrongfully took, or at least wrongfully retained, when Berkadia terminated his employment. His request lacks any legal basis. The memorandum in question indisputably is a privileged communication from Berkadia's external and internal counsel providing legal advice to Berkadia's Executive Committee. Berkadia expressly claimed privilege over this document, and has in no way waived the privilege. Nor can Plaintiff waive the privilege on behalf of Berkadia. Accordingly, Plaintiff's requested relief should be denied, and the Court instead should order Plaintiff to return the privileged memorandum to Berkadia and destroy all copies in his and his attorneys' possession.

## II.     FACTUAL BACKGROUND

Plaintiff alleges in this action that Berkadia terminated his employment in 2016 not because of well-documented leadership and collaboration problems, but instead because of certain issues he claims he discussed with management in the course of his duties as Berkadia's Chief Underwriter.  One such issue related to a loan known as the Calabash loan.  Berkadia, a commercial mortgage lender, originated the HUD-insured Calabash loan in July 2010, a year before it hired Plaintiff.  The borrower defaulted on the Calabash loan in 2012, and private litigation ensued among the contractor, the borrower, and Berkadia.  During the course of that litigation, Berkadia discovered that an error had occurred during the underwriting of the loan. Berkadia's inside and outside counsel investigated the situation in 2013 and prepared a privileged memorandum to Berkadia's Executive Committee describing their findings and advising the Executive Committee about actions Berkadia could take as a result of the investigation.  That privileged memorandum is the subject of Plaintiff's Motion.[1]

Plaintiff communicated with at least one member of the Executive Committee regarding the Calabash issue in July 2013,[2] and Plaintiff now claims that he was provided with a copy of the privileged memorandum at that time "[a]s part of his role as Defendant's Chief Underwriter" given that "a large part of his role was to ensure that [Berkadia] complied with the law with respect to submissions and statements made by [Berkadia] to HUD."  Plaintiff's Motion, ECF No. 30 at 2.  Notably, Plaintiff does not explain how or why he still has the memorandum in his

---

[1] Berkadia ultimately reported the error to HUD and eliminated any potential for governmental loss on the transaction by reversing the assignment of the loan to HUD (with Berkadia thus incurring the loss from the default of the loan), as evidenced in non-privileged documents Berkadia has produced in this litigation.

[2] Plaintiff's averment that he "opposed the statements that Berkadia made to the government" is false.  Plaintiff's Motion at 3.  To the contrary, he expressed support for Berkadia's submission to the Government, as evidenced in an email to Executive Committee member Randy Jenson.  See Declaration of Lauren Marzullo, attached hereto as Exhibit A ("Marzullo Decl."), at Ex. 1.  Berkadia reserves the right to pursue all available remedies if Plaintiff continues to make such false averments in future court submissions.

possession. The most likely explanation is that when Plaintiff went back into his office to gather his personal belongings after he was notified of his termination, he pilfered the memorandum, presumably to support the claim that he later asserted. Perhaps there is some other explanation, but one thing is clear; he was not authorized to take or retain a privileged memorandum belonging to Berkadia.

Plaintiff claims that these events *in July 2013* were the basis for Berkadia's termination of his employment *over three years later* in October 2016. Notwithstanding the obvious lack of merit to this purported retaliation claim, Plaintiff in essence asks the Court to disregard the clear attorney-client privilege that protects the memorandum from Berkadia's counsel to its Executive Committee, and to permit Plaintiff to use the memorandum in this litigation.

The parties exchanged written discovery on January 19, 2018. Plaintiff specifically requested a copy of the privileged memorandum in his Requests for Production of Documents, and Berkadia objected to this Request on the grounds that the memorandum is protected by the attorney-client privilege. See Marzullo Decl. at Ex. 2, Berkadia's Objections and Responses to Plaintiff's First Requests for Production of Documents at No. 53. Plaintiff simultaneously produced a copy of the privileged memorandum with his document production. The parties agreed to defer depositions until after the upcoming mediation, which was scheduled to occur on March 19, 2018, and then was postponed until April 4, 2018 due to a scheduling conflict. See Marzullo Decl. ¶ 4. At the mediation on April 4, 2018, it became clear that Plaintiff intended to use the privileged memorandum in this litigation notwithstanding Berkadia's assertion of privilege over the document. Id. ¶ 5. As a result, less than a week after the unsuccessful mediation, counsel for Berkadia sent counsel for Sherman a letter demanding that he immediately return the privileged memorandum to Berkadia and destroy all copies of the document. Id. ¶ 6 & Ex. 3. Plaintiff then filed the instant Motion.

## III.  ARGUMENT

Plaintiff's Motion should be denied because the so-called "Attorney Memorandum" is a privileged document and Berkadia is entitled to its return.  "[C]orporations, like individuals, enjoy the protections of the attorney-client privilege." Citibank, N.A. v. Andros, 666 F.2d 1192, 1195 (8th Cir. 1981) (citing Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 608 (8th Cir. 1978) (en banc)).  The attorney-client privilege protects communications between company lawyers and company management related to legal advice.  Diversified Industries, 572 F.2d at 609.  The Eighth Circuit specifically has held that the attorney-client privilege protects investigation memoranda from company lawyers to company management conveying the results of privileged investigations and providing legal advice regarding available courses of action.  Id. at 608-10.  In Diversified Industries, the company learned that certain employees of the company may have committed misconduct, and the company engaged an outside law firm to conduct an investigation and provide a report to the Board of Directors with recommended courses of action.  Id. at 610.  The Court held that the memorandum was protected by the attorney-client privilege.  Id.

This case is on all fours with Diversified Industries.  Here, inside and outside counsel for Berkadia engaged in the same task: conducting a privileged investigation and preparing a memorandum to Berkadia management providing advice regarding possible courses of action.  Although Plaintiff states that he "is not conceding that the Attorney Memorandum is protected by the attorney-client privilege," he has reviewed the memorandum, and surely if there were any basis for arguing that it does not contain legal advice he would have done so in his Motion.[3]

---

[3] Similarly, Plaintiff vaguely references the "crime-fraud exception" to the attorney-client privilege, without providing any argument as to how it could apply to the memorandum at issue.

Plaintiff's Motion at 5. He did not, because he could not.[4] Berkadia is willing to submit a copy of the memorandum to the Court for *in camera* review if the Court desires further proof that the memorandum contains legal advice.[5]

Moreover, the law is clear that the attorney-client privilege "belongs to the corporation" and "[t]herefore, the power to assert or waive the privilege belongs to management, not the individual officers of the corporation." Citibank, 666 F.2d at 1195 (citing Diversified Industries, 572 F.2d at 611 n.5). Stolen documents do not lose their privileged status. In re Grand Jury Proceedings Involving Berkley & Co., 466 F. Supp. 863, 869 (D. Minn. 1979) ("To the extent the documents can be viewed as stolen . . . they should not lose the protection of the privilege."). Plaintiff, as a former management employee of Berkadia, also cannot waive the privilege on behalf of Berkadia. Diversified Industries, 572 F.2d at 611 n.5. In Criswell v. City of O'Fallon, No. 06-1565, 2008 WL 250199 (E.D. Mo. Jan. 29, 2008), for example, a former employee attempted to rely on privileged information from company attorneys to state a claim for wrongful termination and retaliation against the company. The court denied the plaintiff's motion to compel, holding that the privilege belongs to the company, and the former employee could not waive it. Id. at *3. Criswell also makes clear that there is no attorney-client privilege exception applicable to former employees making claims of retaliation, as Plaintiff argues in his Motion.

Plaintiff's citation to three California cases in support of this argument is unavailing. Two of these cases involve retaliation claims *by company lawyers* whose alleged, protected

---

[4] Plaintiff's reliance on Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) is misplaced. That case involved documents prepared by non-lawyers that did not contain any legal advice, and it has no application to the legal advice memorandum from Berkadia's inside and outside counsel to its Executive Committee.

[5] Plaintiff does not ask that the Court rule on the privileged nature of the memorandum at this time. See Plaintiff's Motion at 6. As such, Defendant only has provided a brief summary of the reasons the memorandum is privileged and the privilege has not been waived, but it is prepared to provide more fulsome briefing or argument on this issue if desired by the Court.

communications with the company implicated their own privileged advice. The courts were

focused primarily on whether the plaintiffs' claims must be dismissed to the extent that the

claims were intertwined with privileged attorney-client communications. See Wadler v. Bio-Rad

Labs, Inc., 212 F. Supp. 3d 829, 846 (N.D. Cal. 2016); Van Asdale v. Int'l Game Tech., 577 F.3d

989, 994-96 (9th Cir. 2009) (merely holding that "confidentiality concerns alone do not warrant

dismissal of the [former in-house attorneys' claims]"). In Wadler, for example, the company's

former general counsel claimed that the company retaliated against him in violation of the

Sarbanes-Oxley Act, the Dodd-Frank Act, and state law, and the court considered the "rights of

in-house counsel to use attorney-client privileged information in a retaliation suit." 212 F. Supp.

3d at 846. The court held that the federal common law regarding privilege incorporates the

exception in the Model Rules of Professional Conduct permitting attorneys to rely on privileged

communications in litigation against clients to the extent necessary to prove their claims. Id. at

848-49. This narrow exception has no application whatsoever here, where Plaintiff was not an

in-house attorney and he did not author the privileged memorandum he seeks to use in this case.

The question here is not whether Plaintiff's claims must be dismissed, but rather whether

Plaintiff may use a privileged memorandum that he saw in connection with his duties as a non-

lawyer senior manager.

In the third case on which Plaintiff relies, Erhart v. Bofi Holding, Inc., 269 F. Supp. 3d

1059 (S.D. Cal. 2017), the court simply denied a defendant's motion to strike allegations in the

Plaintiff's complaint that allegedly revealed confidential or privileged information. The court

found that "the cat [wa]s out of the bag" with respect to these allegations given that they had

existed in the public record for months and they had even been reported by the New York Times.

Id. at 1086. The Court did not analyze whether any of the allegations actually revealed

information protected by the attorney-client privilege, and the case in no way supports Plaintiff's

argument that he is entitled to retain and use Berkadia's privileged documents to prove his claims in this litigation.  Id.  Plaintiff does not cite a single case in which a non-lawyer has been permitted to take and rely on privileged documents to prove a retaliation claim, and Criswell makes clear that no such attorney-client privilege exception exists for non-lawyers.

Lastly, there has been no waiver of the attorney-client privilege.  Berkadia has made its intent to assert privilege over this document clear since it served its responses and objections to Sherman's Request for Production of Documents on January 19, 2018.  In those responses and objections, Berkadia specifically asserted privilege over the precise memorandum at issue.  See Marzullo Decl. at Ex. 2, Response 53.  There can be no waiver of privilege where a party provides notice of its intent to assert privilege over the information or documents.  Criswell, 2008 WL 250199, at *3 (finding no waiver of privilege where counsel for party specifically stated that they were asserting privilege over the communications at issue); Shukh v. Seagate Tech., LLC, 872 F. Supp. 2d 851 (D. Minn. 2012) (employer's 16-month delay in seeking court order directing former employee who stole documents to return them did not waive attorney-client privilege where employer consistently asserted privilege over documents since learning they were stolen).  Moreover, the brief period of two and a half months between Plaintiff's production of this document and Berkadia's demand for its return resulted from the parties' agreement to engage in mediation to attempt to resolve this matter, and the accompanying pause in discovery and motions practice.  At the April 4th mediation, it became clear that the parties could not resolve Plaintiff's claims, and Plaintiff made clear that he intended to use this document in spite of its privileged status.  Less than a week later, Berkadia demanded its return. Berkadia took reasonable steps to preserve its claim of privilege over this document and never waived its privilege in light of these circumstances.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion should be denied, and the Court should direct Plaintiff to return the privileged memorandum to Berkadia and destroy all copies in his or his attorneys' possession.

Dated: April 27, 2018                        Respectfully submitted,

s/        Michael L. Banks
Michael L. Banks *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel.: (215) 963-5000
Fax: (215) 963-5001
michael.banks@morganlewis.com

Lauren E. Marzullo *(pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
301 Grant Street
One Oxford Centre, 32nd Floor
Pittsburgh, PA 15219
Tel.: (412) 560-3300
Fax: (412) 560-7001
lauren.marzullo@morganlewis.com

Charles E. Reis, IV
LITTLER MENDELSON P.C.
CReis@littler.com
One Metropolitan Square
211 North Broadway, Suite 1500
St. Louis, MO 63102
Tel.: (314) 659-2000
Fax:  (314) 659-2099

ATTORNEYS FOR DEFENDANT BERKADIA
COMMERCIAL MORTGAGE LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of April, 2018, I electronically filed the above with the Clerk

of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

s/       Michael L. Banks
ATTORNEYS FOR DEFENDANT
BERKADIA COMMERCIAL MORTGAGE LLC