UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| RICHARD SHERMAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 4:17 CV 2183 RWS |
| BERKADIA COMMERCIAL MORTGAGE LLC, | ) | |
| Defendant. | ) | |

## **MEMORANDUM & ORDER**

Plaintiff Richard Sherman moves for an order allowing him to use an allegedly privileged memorandum (the "Memorandum") in support of his case. [No. 30]. Defendant Berkadia Commercial Mortgage LLC (Berkadia) has asked Sherman to destroy the Memorandum based on attorney-client privilege. I have reviewed the Memorandum in camera. Because it is a communication shared between Berkadia and its counsel, for the purpose of receiving legal advice, the Memorandum is protected from disclosure by attorney-client privilege. However, Berkadia has disclosed selective pieces of the protected communications. As a result, under the fairness doctrine exception to the privilege, Sherman may use the Memorandum and disclose only the contents of the "Background," "Concerns," and "Summary of Investigation" sections. The other sections of the Memorandum disclose opinion work product and remain privileged.

## BACKGROUND

Sherman brought this anti-retaliation False Claims Act case against Berkadia after he was terminated from his position as Chief Underwriter at Berkadia. Sherman claims that he was fired in part because he advised Berkadia personnel against falsely certifying to the Department of Housing and Urban Development (HUD) that Berkadia was in compliance with all relevant HUD regulations. The alleged false certification arose from a HUD-insured loan that Berkadia originated, and on which the borrower defaulted, known as the Calabash loan. Based on outside counsel's investigation, Berkadia's inside counsel drafted the Memorandum in question. The Memorandum discusses the results of the audit and the underlying events. Berkadia also produced a second memorandum on the subject. It was that second memorandum that Berkadia provided to HUD. Sherman claims that there were material discrepancies between the two memoranda, and that Berkadia terminated him in part because of his objections to allegedly incomplete and false disclosures provided in the second memorandum.

The parties now dispute whether Sherman can retain and use the Memorandum to present his case. Berkadia argues that the Memorandum is protected by attorney-client privilege and demands that Sherman surrender it and destroy all copies in his possession. [No. 31]. Sherman disagrees and seeks an

order declaring that he can use the Memorandum when questioning witnesses, supporting or responding to motions, and entering evidence into the record at trial.

## LEGAL STANDARD

The attorney-client privilege is a common law rule that federal courts apply when determining evidentiary privileges in federal question cases. See, e.g., In re Berkley & Co., Inc., 629 F.2d 548, 552 (8th Cir. 1980); Fed. R. Evid. 501. Specifically, the privilege is a "long established rule that confidential communications between an attorney and his client are absolutely privileged from disclosure against the will of the client." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977) .The privilege may be overcome, however, if it is waived by intentional disclosure, United States v. Davis, 583 F.3d 1081, 1090 (8th Cir.2009), if the privilege holder places it at issue, Baker v. Gen. Motors Corp., 209 F.3d 1051, 1055 (8th Cir. 2000), or if the client consults the attorney for advice that will help him carry out a "contemplated illegal or fraudulent scheme." In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977).

## ANALYSIS

### I. Attorney-Client Privilege

Berkadia has the burden to prove that the attorney-client privilege protects the Memorandum. Hollins v. Powell, 773 F.2d 191, 196 (8th Cir. 1985). Specifically, Berkadia must demonstrate that the Memorandum is a confidential

communication made between a lawyer and his client for the purposes of receiving legal advice. Diversified Indus., Inc. v. Meredith, 572 F.2d at 602. After examining the Memorandum through in camera review, I find that Berkadia meets this burden. First, Berkadia demonstrates that the Memorandum was a communication made between a lawyer—Berkadia's in-house counsel—and his client—Berkadia. Second, the Memorandum is marked as a confidential document subject to attorney-client privilege. The Memorandum was disclosed to Sherman but only in his capacity as an employee of Berkadia. Third, the Memorandum itself conveys legal advice concerning Berkadia's options for addressing the Calabash loan default. Because the Memorandum satisfies these criteria, it is protected by attorney-client privilege.

**II. Waiver**

Despite its importance, the attorney-client privilege is an exception to the otherwise liberal rules of discovery, Hickman v. Taylor, 329 U.S. 495, 507 (1947), and it can be waived. Under the at-issue waiver, the privilege may be overcome "where the client places the subject matter of the privileged communication at issue." Baker v. Gen. Motors Corp., 209 F.3d 1051, 1055 (8th Cir. 2000). Closely related is the "fairness doctrine," by which "testimony of a privileged communication, in fairness, requires production of the remainder." In re von Bulow, 828 F.2d 94, 102 (2d Cir. 1987). Under this doctrine, a party should not be

able to "make use of privileged information as a sword when it is advantageous for the privilege holder . . . and then as a shield." State ex rel. St. John's Reg'l Med. Ctr. v. Dally, 90 S.W.3d 209, 215 (Mo. Ct. App. 2002).

In Berkadia's memorandum to HUD, (the second memorandum) it disclosed a summary of the outside counsel's investigation. Those details about the investigation would otherwise have been privileged because they were gathered from interviews with Berkadia's employees for the purpose of seeking legal advice. See Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1977). For its own benefit, Berkadia disclosed such details as "[n]either Tanner nor Brady [Berkadia employees] recalls why the Impact Fees were removed…" and "Tanner instructed the Capmark loan processor to make sure the fees were covered in the application." (ECF No. 34-1 at 2). This disclosure leaves out factual findings that complicate the above statements, and which are laid out in the first, allegedly privileged Memorandum.

In short, Berkadia discloses information that was drawn from privileged interviews that inside and outside counsel had with Jim Tanner and other Berkadia employees. At the same time, Berkadia seeks to withhold additional information gathered from those interviews which arguably undercuts its public statements. Furthermore, Sherman has provided evidence that members of Berkadia's Executive Committee have denied certain factual aspects of the Memorandum in

their deposition testimony. (ECF No. 46 at 4). Berkadia cannot use the privileged information as both a "sword" and a "shield." <u>State ex rel. St. John's Reg'l Med. Ctr. v. Dally</u>, 90 S.W.3d 209, 215. As a result, Berkadia has made limited waiver of attorney-client privilege under the fairness doctrine. Sherman may disclose and use the "Background," "Concerns", and "Summary of Investigation" sections of the Memorandum. These sections disclose facts discovered during interviews with Berkadia employees, the content of which was partially disclosed in Berkadia's memorandum to HUD.

The other sections of the Memorandum provide legal impressions from Berkadia's counsel not otherwise disclosed, in part or in full. Accordingly, these other sections of the Memorandum are protected as opinion work product. <u>See</u> <u>Baker v. Gen. Motors Corp</u>, 209 F.3d 1051, 1054 ("Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories.").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Sherman's motion for relief, [No. 30], is **GRANTED** in part and **DENIED** in part. Sherman may use the Memorandum and disclose its factual conclusions contained in the "Background,"

"Concerns", and "Summary of Investigation" sections. Sherman may not, however, disclose or use the other sections of the Memorandum.


                                                                                     _____
                                                                                     RODNEY W. SIPPEL
                                                                                     UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2018.